The next case this morning is 18-2187, the United States v. Lucas Heidenstrom. Good morning, Mr. Andrews. Good morning, Judge Lynch, Judge Sellier, Judge Graham. My name is Robert Andrews. I represent Lucas Heidenstrom in this matter. I'm here today asking the Court to apply the presumption that when Congress uses the same language in two statutes with similar purposes, that the language have the same meaning with respect to the guidelines. In this case, this is an interpretation of what causation is necessary for the death-resulting sort of enhancement to be applied or can be applied. But we already know that the Supreme Court treats statutes and guidelines differently. We know that from the Johnson case, from the Supreme Court's striking down of certain languages unconstitutionally vague in the Armed Career Criminal Act, but upholding the use of exactly the same language or essentially the same language in the sentencing guidelines. And while it's true that it sometimes treats those things differently, Your Honor, what we see is... And there's a reason for that. I mean, the reason for that is statutory language. We're looking to... Courts are looking to discern legislative intent. What did Congress mean when it used the language, right? In the guidelines, we're talking about the Sentencing Commission granting usually pretty broad discretion to a sentencing court, and the Sentencing Commission's use of the language for that different purpose isn't necessarily controlled by Congress's intent in drafting a statute. And I agree with that, Your Honor, except that other circuits have said that the language from the statute does in fact apply to at least 2D1.1. And if it applies there, then we have congruent language among 2D1.1. We have it in suit is harm, and we have it in when death resolves. Now, the court could say, we see a distinction here. But it runs into the problem of the other circuits who have said, no, no, we think it's the same. The word... If I understand Burge, the logic was the ordinary meaning of the word results and a concern about latity, both of which would seem to apply with equal force to the guideline, because it's the same word. There's no indication that you wouldn't apply ordinary language. So all of that would suggest maybe we should reach to me, Burge, consonant with this guideline. But I'm not following what follows from that. So Burge says it doesn't have to... We hold, at least where the use of the drug distributed by the defendant is not an independently sufficient cause of a victim's death, he cannot be held for a death's results unless such use is a but-for cause. So I'm not quite following how that helps you. So there are two problems. The first problem is that it's a combined drug case. Yeah, but that's not a problem, given this language. Right, and then the second problem is the but-for cause. What in the record shows that there's any less of a but-for cause here than in Pacheco? Well, the problem is the concentration of methanol. If there were a concentration of methanol and testing had been done to give us some idea of the timing of when the methanol may have been ingested, we would have a potential but-for causation in the sense that if it was methanol... But in Pacheco, there was no testimony. We know it was combined. They said it was ketamine plus. It doesn't say which was more than the other. Isn't that just what we have here? Well, and that's the problem. From my view of Burge, Burge is clear... Yeah, but see, you want Burge to rule out Pacheco. That's right. But I don't see... No, I know that. But I don't see where you're getting what in Burge is inconsistent with Pacheco because Burge rejects the notion that it has to be... It doesn't say it has to be an independent cause. It just says it has to be but-for. And then it says it's not but-for if all you can say is that there was some likelihood of it causing it. But Pacheco doesn't disagree with that. Pacheco doesn't say as long as there's some likelihood it's enough. Pacheco said on that record it was in the medical records ketamine plus and the defendant failed to get expert testimony to clarify that. So on that record, we just said in Pacheco, as I read it, there's no reason to think that ketamine wasn't the cause, a cause. What's different here? Well, I tried to develop the record with respect to the methanol. The problem is that we ran into problems with that evidence being gone, which to me makes it a problem of who has the burden. We think that the government has the burden there with respect to... But it's also a problem with respect to the standard, isn't it? Because when you're construing a criminal statute, even if the government has the burden, that burden is proof beyond a reasonable doubt. That's not the standard under the guidelines. That's right. All you need under the guidelines is a preponderance, much easier standard to meet. But there was no one who was willing to say that it was a but-for cause, and there was no one who was willing to say it was... I thought you were going to ask that. I thought the district court said it was a contributing cause. Well, I think what the district court said... Not that there was a risk that it was a contributing cause, but that it was a contributing cause. That makes it but-for. Well, I worry about that interpretation a little bit because I think the language was the district court asked the expert pathologist, would you be willing to say that it played no role? And no one was willing to say it played no role because it was a combined drug effects case, which suggests to me if they're ruling out combined drug effect cases, which I think is what they're doing... They don't do that. I think they do. I think that it's not enough that it be combined. I think it has to be combined and then it has to be but-for. But then you're saying it has to be an independent cause, which they specifically say it does not... This is what she says. Just as Kagan writes, we hold that at least where the use of the drug distributed by the defendant is not an independently sufficient cause, a defendant cannot be held liable unless such use is a but-for cause. That means but-for does not have to mean the same as independent. So that could be just a contributing cause. We're talking about the straw that breaks the camel's back. That's the analogy that Burrage uses. Is this the straw that breaks the camel's back? We don't have evidence of that. But that would be an independent cause, wouldn't it? I think it is. I think that it's combined. All of the pathologists in this case were very clear. We can't separate this out. And because we can't separate this out, it has to be a combined effect. Does this matter in the case, given what else the district court said, that she would vary anyway or he would vary anyway? It does matter, Your Honor. And I think the reason that it matters is because the reasonableness of the sentence is not entirely detached from the guideline range. What the district court did was say, I would grant an upward variance on these factors. And even if I can't grant an upward variance on this factor, I would give a variance sentence, which I think is supported here. And that's the second part of my argument, is that if it has to have some relationship between the seriousness of the cause and the length of the variance. And I'm sure you can see that death is a very serious cause. But the question is, does it expand it as much as the five-year mark that the district court imposed? And my view of that is that no, it doesn't. And the reason that it doesn't is because part of the guidelines are structured around the idea that people who take drugs die from it. And that that is something that is in some part already included. And I wouldn't or I didn't suggest that the court had no power for upward variance. I suggested an upward variance from the guidelines. It just amounted to time served. But that sounds to me like a challenge to the substantive reasonableness of the sentence. And there's no briefing to that effect at all. And I agree with that idea because I think that across the board. Why isn't it briefed? There isn't a word in the brief that says that this sentence is substantively unreasonable, nor are there any authorities cited as to how we approach a claim of substantive reasonableness, how we review it, and so on and so forth. And what I'm relying on, Your Honor, is the idea that the district court simply didn't have the power without meeting the appropriate causation. Thank you. Thank you. May it please the court. Julia Lopez with the United States. Your Honor, I'd like to address one of the last questions that Judge Barron just posed as to whether this discussion about Burrage and Pacheco actually matters in this case. It's our position that the court does not need to reach the issue of whether there was any error in the district court's departure decision because the district court was quite clear that even if the departure were inappropriate, it would impose the same sentence as a variance. Well, Ms. Lopez, as you know, appellate courts frequently have a choice of grounds on which to resolve a matter. Is it the government's position that we should not resolve this Burrage-Pacheco issue, which, after all, if there was clarity provided on that, that would perhaps be helpful to the district courts and the bar? Yes, Your Honor, I understand certainly that consideration the court may take into account. Nonetheless, there are numerous decisions from this court saying both when there's harmless error in this context, we're not going to reach the question of whether there was a procedural problem in the sentence, and the court has also said numerous times that we are not going to reach an issue that's not necessary to the resolution of the case. Your Honor, you know it's odd because very frequently the government is up here asking us to reach an issue because the government thinks it would be helpful to it in future prosecutions if we did. None of the cases you cite say we can't reach an issue. It's more that we shouldn't reach the issue. So what's the government's interest here in us not reaching this issue? Well, in the context of this case, Your Honor, our interest was in affirming the sentence below, which we think was appropriate. That suggests you lack confidence in the merits-based determination. Your Honor, as I set forth in our brief, although we do press a harmless error argument, we would also contend that there was no error in the district court's interpretation here. The court appropriately and correctly applied the rule of Pacheco that is this court's existing precedent on the issue of when to apply a 5-2.1 departure in the case of mixed drug intoxication. Do you agree that Burge rules out a finding of death results in the case of a combination drug? I think it depends, Your Honor, on whether the drug that was unlawfully distributed by the defendant was a but-for cause, meaning if you remove that drug from the cocktail, would the victim have lived, right? If you remove that drug and the victim would have lived, then it's a but-for cause, but there are situations where I think a medical examiner is not able. And that's different than independent cause in the sense that that's not saying that if you included it alone, it would cause the death. That's correct, Your Honor, yes. And you think Pacheco is consistent with that view or inconsistent with that view? I think Pacheco, although using the language of but-for causation, takes a slightly different view of what but-for causation is when you have a mixed drug case. Could you explain what you understand Pacheco's view to be different than what you just described Burge's view to be? I agree, Your Honor. Pacheco allows for a situation where you have two drugs that are concurrent causes, which is essentially what we have in this case. And so in Pacheco, there was no evidence about whether the victim would have died if you removed the ketamine from the equation. Similarly, we don't – the court was not able to find by a preponderance that the victim here would have died if you removed the – or would have lived, rather, if you removed the fentanyl. Does it matter in Pacheco that the defendant waived the point about expert evidence on that point? No, Your Honor. I think that was really going to a different appellate issue, which was that the government was, you know, required to put on some expert evidence. I think ultimately, based on the record before, the court concluded that it was sufficient that the drugs were a concurrent cause. And we would argue that that is an appropriate reading. But you would say inconsistent with Burge? I believe so, Your Honor. And what would be the logic of saying that the ordinary meaning of results plus lenity produces different meanings of the word result in the two provisions? Well, I think, Your Honor, as Judge Shiley noted, the context is very different here. The provision of the Controlled Substance Act at issue in Burge was tethered to a specific federal crime and to a specific act. So it results from use of the drug that was unlawfully distributed. Here, under 5K2.1, it simply says if death resulted. It's not tethered to a particular crime. It's not tethered even to a particular act. And so it could apply in any number of circumstances. And we see from this court's line of cases, going back to Diaz and Sanchez, that it applies in cases right here. What's the reason to have a non-ordinary? We don't normally adopt non-ordinary interpretations of language. Burge tells us what the ordinary meaning of results is. And it says in light of the lenity concern, which equally applies to a guideline, it makes sense to adopt the ordinary interpretation. You're saying there's some reason. Do you want a general rule that we should adopt non-ordinary interpretations of language and guidelines? That doesn't make much sense. No, Your Honor. Although, again, I think the context is really different because the resulted in the guideline is not tethered to any particular action. So if death resulted, which is the language of the guideline, has got to mean if death resulted from something, all right? And what's the something in your interpretation? I think you have to go back to probably the relevant conduct provisions of the guideline, which include all acts and omissions of the defendant. So if death resulted from the defendant's acts or omissions, that's what if death resulted means? I think that's consistent with this court's precedent on this issue, Your Honor. All right. So the acts or omissions that are involved here are the defendant's provision of heroin laced with fentanyl. Yes. Right? But that takes us around in a circle because if death resulted means but for, right? You've just said that analysis can't prove that the death here resulted from the defendant's provision of heroin laced with fentanyl. I understand the court's point. I think the difference in what I read the court to do in Pacheco is to say that the distributed drug there, the ketamine, contributed to an aggravated force that was the cause of the victim's death. Now, I understand the Supreme Court rejected that interpretation in Burrage. The government had advanced that. The Supreme Court called that a permissive interpretation of the statute. But I think for the reasons that, Judge Shelley, you had mentioned earlier in harkening back to sort of the Beckles-Johnson line of precedent. But Beckles and Johnson weren't construing the language differently. I understand that. They were just concluding what the constitutional result of the same meaning of the language is, which was different in a guideline circumstance and a statutory circumstance for the reason the court gave. You want us to say we should adopt a non-ordinary. We're bound to say that the ordinary meaning of results is what Burrage says, aren't we? Yes. I think the question, Your Honor, is we're not starting on a blank slate. The court has precedent. We have Pacheco. But the question is whether a subsequent Supreme Court precedent overrules it. No, I understand that. So the fact that we have precedent really is of little consequence unless Burrage can be set to one side for some reason. And I understood you to argue that to reject Judge Selye's opening premise that we can read statutory language, which is very similar to guidelines language but not identical, that we can read them differently given one is Congress and the other is the sentencing guidance. Once you've rejected that proposition, then you face the problem that Judge Barron has been talking about, which is, well, yeah, the language may be a little different, but that the phrase results from is in common. And the Supreme Court, at least in construing the statute, says this is what it means. So the logic of your argument seems to be that we should adopt the Burrage notion. We should, in a sense, modify Pacheco. I'm just a little unclear about what the government's real position is here. Our position, Your Honor, is that the context is different and so the court can take that into account. Our position also, though, is that any error was harmless, and if the court were to remand this, we know that the district court would impose the same sentence. And so in that sense, remand would be meaningless. The court was clear that it would impose the same sentence. Well, no, Mr. Andrews would then make the argument that he's suggested here. He would make if that were the actual rationale for the district court's opinion. The idea is it's hard for a judge. I don't know if that's, well, to get your view on it. I take your opponent's argument to be it's hard for a judge to be able to do a variance in the abstract. He's always varying with some understanding of what the baseline would be if the guideline applied. And so what he's, the suggestion is if he's got a mistaken understanding of what the guideline would be, that is going to have some influence on the variance. If he understood instead that results from means don't apply the departure in the event of, in light of Burrage, then when I now vary, I know I'm varying in a world in which I could not depart. Now, are you saying that we can read the record to say that when he varied, he was assuming he could not depart? Because if that's the case, then it would seem you'd have a pretty forceful argument that there would be a ways to remand. Yes, Your Honor. I think Judge Shee. Shee. Yes. Thank you. Shee. Yes, Judge Chorison. I think absolutely the court indicated that the same factors that might support the departure, she considered separately under the 3553A factors and was quite clear, even if I can't depart, these same factors support the variance sentence that I'm imposing. And as we set forth in our brief, we would argue that that was absolutely not an abuse of discretion, that she appropriately considered those factors, and that was divorced from her understanding of the departure. Sorry. Again, what were those factors that would have supported an upward variance? I think there are three primary factors, Your Honor. One, the harm that this drug did play a contributing role, a meaningful role in another person's death. The seriousness of the conduct that he was knowingly distributing fentanyl, which at the time was known to be an extremely dangerous drug, and the need to deter other people who would also consider engaging in such dangerous conduct. And what would the judge be varying from? The guideline range of 8 to 14 months, Your Honor. Yes, but I thought the district court recalculated the guideline range using the departure. No, in fact, she never did. She simply said the guideline range is 8 to 14 months. These are the factors I'm considering. I believe they would support the departure. If I'm wrong on that, they would support the variance as well, but she never recalculated the guidelines. And so for these reasons, we would ask the court to affirm. Okay. Thank you. Thank you.